# IN THE SUPREME COURT OF IOWA

No. 10–0431

Filed September 9, 2011

**STATE OF IOWA,**

>      Appellee,

vs.

**RAYMOND CARL REDMOND,**

>      Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Joseph Moothart, Judge.

Appellant claims district court abused its discretion by admitting his prior harassment conviction for impeachment purposes under Iowa Rule of Evidence 5.609(*a*)(1). **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas W. Andrews, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Dustin S. Lies, Assistant County Attorney, for appellee.

**ZAGER, Justice**.

Raymond Redmond asserts the district court erred in allowing the State to impeach Redmond with his prior first-degree harassment conviction under Iowa Rule of Evidence 5.609(*a*)(1). The court of appeals affirmed the district court's evidentiary ruling. On further review, we find the district court abused its discretion by allowing the State to impeach Redmond with his prior conviction as the prior conviction's probative value did not outweigh its prejudicial effect to Redmond. The error was not harmless.[1] Accordingly, we vacate the court of appeals decision, reverse the district court judgment, and remand the case for a new trial.

**I. Background Information.**

**A. Facts and Proceedings.** Raymond Redmond was charged by trial information with indecent exposure, a serious misdemeanor, in violation of Iowa Code section 709.9 (2009). On October 13, 2009, P.M. reported to police Redmond exposed himself to her earlier that evening. The matter proceeded to a jury trial.

At trial, Officer Albers of the Waterloo Police Department testified he received an early-evening call about a disturbance at the University Black Hawk Motel, and upon arrival, he found Redmond in a dispute unrelated to P.M.'s allegations. Albers promptly diffused the dispute. In light of Redmond's heavy intoxication, Albers instructed Redmond "[t]o go back in to his room, stay there and don't come out the rest of the evening." Albers testified Redmond was so intoxicated it appeared he was "gettin' real close to" passing out.

---

[1]Because we find Redmond is entitled to a new trial for evidentiary reasons, we need not examine Redmond's alternative error claims.

P.M. testified she was shopping with her teenage son that evening, but the two had an argument as they returned to their apartment at the University Black Hawk Motel. P.M. had befriended her neighbor Redmond and his roommates, Ben and Maria. After letting her son into their apartment, she testified she went down to Redmond's apartment. P.M. frequently stopped by to see her three friends. P.M. said Redmond let her in, and she asked Redmond where Ben and Maria were. Redmond responded he did not care where his roommates were and appeared distraught and intoxicated to P.M. She testified Redmond then stood up and asked her if she wanted to see his penis. She testified, "[J]ust like that it was there in front of me." Redmond allegedly approached to within a foot and a half of where P.M. was sitting with his erect penis exposed. P.M. stated she repeatedly told Redmond "to put it away, it wasn't right." P.M. testified her son interrupted the incident by knocking on the door, which allowed her to leave the apartment.

On cross-examination, P.M. acknowledged she has been diagnosed with "bipolar two" and is prescribed medications. P.M. stated she had not taken her daily medication at the time the incident occurred.

Officer Albers returned to the University Black Hawk Motel in response to P.M.'s call. She told Albers she went to visit Redmond and his roommates, and Redmond exposed himself to her. Albers noted P.M. was confused about whether to file charges, but she was coherent and sober. Albers testified he did not talk with Redmond after P.M.'s report because Redmond did not answer his door when Albers knocked. Albers stated later in the evening Officer Wittmayer took Redmond into custody.

Redmond's testimony was brief. He testified Officer Albers came to his house early in the evening to resolve a dispute unrelated to P.M. Redmond testified he passed out after Albers left. Redmond next recalled

being awakened to Officer Wittmayer banging on his door to take him into custody in connection with P.M.'s report. Redmond claimed he did not see P.M. on the evening of October 13.

On cross-examination, Redmond admitted he was very intoxicated on the night of October 13. Redmond reiterated he passed out that evening and awoke to the police banging on his door. The State questioned Redmond about his prior first-degree harassment conviction:

> Q. You've previously been convicted of First Degree Harassment; is that correct?
>
> [DEFENSE COUNSEL]: Objection, Your Honor, previously urged.
>
> THE COURT: Okay. I'll note the objection; it's overruled for reasons previously indicated . . . .
>
> A. Yeah, I have been charged with First Degree Harassment.
>
> Q. Okay. But it's not that you've been charged, you were convicted on August 21 of 2009; were you not? A. Yes, I was convicted of it, I guess, 'cause I went to court for it.
>
> Q. Okay. And that was on August 21, 2009; correct? A. Uh-huh.

At the time Redmond was cross-examined, the district court did not instruct the jury to restrict the use of Redmond's harassment conviction to assessing his testimonial credibility. Before closing arguments, the district court read a jury instruction stating the jury may consider Redmond's conviction "only to help decide whether to believe the defendant and how much weight to give his testimony."

During closing argument, the county attorney again revisited Redmond's prior harassment conviction. While instructing the jury it had a duty to determine who was telling the truth between Redmond and P.M., the county attorney stated:

> The defendant admitted on the stand that he has been convicted of First Degree Harassment as recent as August of 2009. Okay? He told very little of the story . . . . Ask yourself is that the person you're going to believe?

The jury convicted Redmond of indecent exposure. He was sentenced to jail for 365 days. Redmond's jail sentence was suspended except for 119 days, and Redmond received credit for 119 days previously served. Redmond was ordered to pay a fine and received supervised probation for two years. The district court imposed a ten-year special sentence of parole and required Redmond to register as a sex offender.

Redmond filed a timely notice of appeal. The case was transferred to the court of appeals. The court of appeals affirmed Redmond's conviction finding the district court did not abuse its discretion in admitting Redmond's first-degree harassment conviction for impeachment purposes. The court of appeals also preserved Redmond's ineffective-assistance-of-counsel claim for postconviction relief. We granted Redmond's petition for further review.

**B. District Court's Decision to Admit Redmond's Prior Conviction.** After the State presented its case, it informed the court of its intention to impeach Redmond with his prior first-degree harassment conviction in the event he testified. Redmond's counsel remarked he did not know the facts of the prior conviction, but he was likely to object. The court did not rule on the issue at this time and waited to make a ruling until Redmond testified and the record was further developed.

After Redmond's direct examination, the court conducted another colloquy. The State informed the court Redmond's prior conviction was for first-degree harassment, the conviction was on August 21, 2009, and Redmond's jail sentence concluded in September of 2009. The State

provided the court no other details, and the court did not request additional information.

The court properly determined Iowa Rule of Evidence 5.609(*a*)(1) governed this evidentiary dispute and recited the rule's balancing test. The State advocated for the conviction's probative value:

> I think the fact that the defendant has just recently been convicted of Harassment in the First Degree, I believe while intoxicated as well, goes to establish that this type of behavior—that the defendant's impeachment on this offense is proper . . . .
>
> . . . .
>
> I think it's clear that the defendant acts in an aggressive and sometimes obviously violent or threatening manner when intoxicated given that previous conviction. . . . I was just going to raise it for the purpose of letting the jury know or making the jury aware that it exists.

Thus, the State essentially argued the conviction is probative for its propensity inference: the fact finder will assume Redmond behaved toward P.M. in conformity with his prior actions.

Redmond objected to the conviction's admissibility stating the conviction would cause him "extreme prejudice." He did not specifically articulate the prejudice, but it is clear he is referring to a fear the jury will assume his guilt based upon a similar prior conviction.

After hearing the parties' oral arguments, the court ruled, "Under these circumstances, in my opinion, the probative value of admitting the evidence of the prior conviction . . . outweighs the prejudicial effect [to] the accused . . . ." The court did not make any case-specific considerations or findings on the record.

## II. Standard of Review.

We review rulings on the admission of prior crimes evidence for an abuse of discretion. *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008). An abuse of discretion occurs when the trial court exercises its discretion

"on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)) (internal quotation marks omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

### III. Issues.

Redmond claims the district court abused its discretion in two respects. First, Redmond asserts the district court abused its discretion when it failed to make a record of explicit findings in employing the rule 5.609(*a*)(1) probative-versus-prejudice balancing test. Second, Redmond claims the district court abused its discretion in concluding the probative value of his harassment conviction outweighs its prejudicial effect.

### IV. District Court Did Not Abuse Its Discretion by Failing to Make On-The-Record Findings.

This court has never required the district court to make explicit findings as to a prior conviction's admissibility for impeachment purposes. In considering whether explicit findings were required under rule 5.609(*b*)[2] we noted "it would be [the] better practice for the trial court to make on-the-record findings as to the specific facts and circumstances which demonstrate the probative value of the conviction substantially outweighs its prejudicial effect." *State v. Hackney*, 397 N.W.2d 723, 728 (Iowa 1986). Similarly, in *State v. Daly*, 623 N.W.2d

---

[2]The textual language of Iowa Rule of Evidence 5.609(*b*) provides support for an on-the-record requirement as it states "a conviction . . . is not admissible . . . unless the court determines . . . the probative value of the conviction *supported by specific facts and circumstances* substantially outweighs its prejudicial effect." (Emphasis added.) Iowa Rule of Evidence 5.609(*a*)(1) does not contain any reference to "specific facts and circumstances" in its text. This opinion does not purport to make any determinations with respect to an on-the-record-findings requirement under rule 5.609(*b*).

799, 802–03 (Iowa 2001), we declined to hold the district court abused its discretion simply because it failed to make a record of its balancing considerations. Instead, in *Daly* we independently examined the district court's admissibility decision and concluded the district court's decision to admit the prior conviction, not its failure to make explicit findings, was an abuse of discretion. *Daly*, 623 N.W.2d at 802–03. We have held, however, that when a district court makes explicit on-the-record findings as to probative value, prejudicial effect, and individual circumstances, the district court often creates a persuasive record that it properly exercised its discretion. *See State v. Axiotis*, 569 N.W.2d 813, 816 (Iowa 1997), *overruled on other grounds by State v. Harrington*, 800 N.W.2d 46, 47 (Iowa 2011).

Federal courts generally follow a similar approach. The United States Court of Appeals for the Seventh Circuit, in one of the more cited passages on this issue, instructed the district court:

> In the future, to avoid the unnecessary raising of the issue of whether the judge has meaningfully invoked his discretion under Rule 609, we urge trial judges to make such determinations after a hearing on the record, as the trial judge did in the instant case, and to explicitly find that the prejudicial effect of the evidence to the defendant will be outweighed by its probative value. When such a hearing on the record is held and such an explicit finding is made, the appellate court easily will be able to determine whether the judge followed the strictures of Rule 609 in reaching his decision.

> The hearing need not be extensive. Bearing in mind that Rule 609 places the burden of proof on the government, the judge should require a brief recital by the government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of the conviction. The defendant should be permitted to rebut the government's presentation, pointing out to the court the possible prejudicial effect to the defendant if the evidence is admitted.

*United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976) (citations omitted); *see also United States v. Sides*, 944 F.2d 1554, 1561 (10th Cir. 1991) ("[T]his circuit has not adopted a requirement that trial courts make explicit findings in determining the admissibility of prior convictions. While explicit findings enable the appellate court to ensure the proper application of Rule 609, explicit findings are not 'an absolute requirement the nonperformance of which mandates reversal.' " (citation omitted) (quoting *United States v. Jackson*, 627 F.2d 1198, 1208–09 (D.C. Cir. 1980))).

The district court should undertake to make explicit findings concerning the balancing test articulated in rule 5.609(*a*)(1). *See Hackney*, 397 N.W.2d at 728. Such findings guide courts in making principled admissibility determinations in accord with the language of rule 5.609(*a*)(1). Explicit findings also provide appellate courts assurance the district court properly exercised its discretion. Absent such findings, it may be difficult for the appellate courts to determine if the district court properly utilized its discretion or applied the proper framework. The absence of explicit findings, however, is not a per se abuse of discretion. *See Daly*, 623 N.W.2d at 802–03. Instead, appellate courts are then required to perform their own de novo review to determine whether the district court invoked any meaningful discretion and whether the record supports the district court's decision to admit the prior conviction.

Here, the district court held an on-the-record hearing to determine the admissibility of Redmond's prior conviction. The district court properly noted rule 5.609(*a*)(1) governed the conviction's admissibility and allowed both parties to present argument as to admissibility. The district court did not make explicit findings as to probative value or

prejudicial effect. Absent these findings, we proceed de novo to determine whether the district court abused its discretion in admitting Redmond's prior first-degree harassment conviction.

## V. Admissibility Under Rule 5.609(*a*)(1).

Iowa Rule of Evidence 5.609 states:

> *a. General rule.* For the purpose of attacking the credibility of a witness:
>
> (1) Evidence that a witness other than the accused has been convicted of a crime shall be admitted, subject to rule 5.403, if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> (2) Evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Rule 5.609(*b*) restricts admissibility of prior convictions more than ten years from the date of the conviction or release of the witness from confinement unless the "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Iowa R. Evid. 5.609(*b*).

**A. History of Prior Conviction Admissibility.** The traditional rationale for admitting prior convictions rests on the assumption prior convictions undermine a witness's credibility because a person who commits a crime is more likely to lie than a law-abiding citizen. *See Parker*, 747 N.W.2d at 206 (observing this traditional policy rationale). In 1974, this court reexamined the admissibility of prior convictions against a defendant–witness and modified the traditional per se acceptance of prior conviction evidence. *State v. Martin*, 217 N.W.2d 536, 540–43 (Iowa 1974). We framed the issue as whether the State could cross-examine

the defendant about "prior felony convictions unrelated to truth and veracity." *Id.* at 538. We concluded "relatively unlimited cross-examination of a witness as to prior felony convictions, more particularly an accused, is fraught with inequities." *Id.* at 541.

This court cited to *Gordon v. United States*, 383 F.2d 936 (D.C. Cir. 1967), which was drafted by Chief Justice Warren Burger, then a circuit court of appeals judge, for guidance in establishing admissibility standards. *Id.* at 540–42. First, we directed courts to look to the nature of the impeachment, as the impeachment should not "show that the accused . . . is a 'bad' person but rather . . . show background facts which bear directly on whether jurors ought to believe him." *Id.* at 540 (quoting *Gordon*, 383 F.2d 940) (internal quotation marks omitted). Second, we directed courts to consider the "remoteness in time" of the conviction, as dated convictions may have less bearing on witness truth and veracity. *Id.* at 541. We also noted prior convictions "based on conduct the same or substantially similar to [the current charge] militates against admissibility of the prior [conviction] because it enhances the danger of unfair prejudice." *Id.* at 543 (quoting *People v. Delgado*, 108 Cal. Rptr. 399, 404–05 (Ct. App. 1973), *overruled on other grounds by People v. Rist*, 545 P.2d 833, 840 (Cal. 1976)). This court summarized:

> [F]or the purpose of attacking credibility of any witness, including an accused . . . , evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved dishonesty or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account factors such as (a) nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors.

*Id.* at 542.

*Martin* created this state's framework for admissibility of prior convictions against the accused. *Martin*'s four factors still guide the legal landscape in this area of law. *See, e.g., Daly*, 623 N.W.2d at 802–03 (citing *Martin*'s factors as controlling); *Axiotis*, 569 N.W.2d at 816 (same); *Hackney*, 397 N.W.2d at 726–27 (Iowa 1986) (same).

But *Martin* and *Gordon* both predated the adoption of specific evidentiary rules governing the impeachment use of prior convictions. Federal Rule of Evidence 609 was adopted in 1974. In 1983, this state adopted Iowa Rule of Evidence 5.609 which was patterned after the Federal Rule. As the *Martin* court observed, "The effect of prior felony convictions upon testimonial rights [was] a matter of concern to both courts and legal scholars," and the rules of evidence were created in culmination of these long-standing concerns. *Martin*, 217 N.W.2d at 538. The rules of evidence sought to replace fragmented case law on the issue and provide definite guidance as to the admissibility of prior convictions. The legislative history of the Federal Rule is substantial, and the rule was the byproduct of a heated ideological congressional debate. *See* Victor Gold, *Impeachment by Conviction Evidence: Judicial Discretion and the Politics of Rule 609*, 15 Cardozo L. Rev. 2295, 2298–2321 (1994) [hereinafter Gold] (providing a detailed summary of Rule 609's legislative history). The tension resided between society's interest in convicting the guilty and providing the accused a fair trial. *Id.* at 2310. Federal Rule of Evidence "609(a) embodies a series of calculated risks that admission of prior convictions evidence will lead to the acquittal of the guilty or the conviction of the innocent." *Id.* at 2321.

As a result of this congressional struggle, one commentator quipped, "The text of Rule 609[] incorpor[ates] no less than three balancing tests, two references to fairness, one to justice, and several

other undefined terms . . . ." *Id.* at 2296. Iowa Rule of Evidence 5.609, patterned after the Federal Rule, contains a similar set of compromises. Rule 5.609 distinguishes between the testimonial rights of the accused and other witnesses, between crimes of dishonesty or false statement and other crimes, and between convictions not within ten years and those more recent. Iowa R. Evid. 5.609. Depending on such classifications, different admissibility tests are required.

Rule 5.609(*a*) and *Martin* embrace many of the same principles. But the discrete framework of rule 5.609 and *Martin*'s more generic analysis have tenuously coincided, at times causing precedent inconsistent with the rule's language. *See, e.g., Harrington*, 800 N.W.2d at 47, 50–51 (overruling case law that applied *Martin*'s four factors to crimes that come within rule 5.609(*a*)(2) as this rule provides the district court no balancing discretion). For example, *Martin*'s factors direct the court to determine the prior conviction's bearing on veracity, but rule 5.609(*a*)(2) provides a special rule of admissibility for convictions involving dishonesty or false statement. *Id.* at 50. How *Martin*'s generic factors interplay with the rule's specific contours is unclear.

Federal courts have developed a body of case law tied to the language and approach articulated in Federal Rule of Evidence 609. *See Tome v. United States*, 513 U.S. 150, 160–61, 115 S. Ct. 696, 702–03, 130 L. Ed. 2d 574, 584 (1995) (noting the Federal Rules of Evidence often adhere to common law, but "[w]here the Rules did depart from their common-law antecedents, in general the Committee said so"). The principles articulated in *Gordon* and other pre-Rule 609 cases serve as valuable guidance, but the framework is not controlling in federal courts. Our jurisprudence must move past *Martin*'s framework and embrace the comprehensive approach instructed by Iowa Rule of Evidence 5.609.

*See, e.g., Harrington*, 800 N.W.2d at 48–51 (distinguishing admissibility rules between convictions within rule 5.609(*a*)(1) and (2) in accord with the rule's text). This case presents an opportunity to examine rule 5.609(*a*)(1)'s policies and framework for admitting prior conviction evidence against the accused.[3]

**B. Framework for Admitting Convictions Under Rule 5.609(*a*)(1).** Iowa Rule of Evidence 5.609(*a*)(1) applies to a witness's prior convictions that: (1) are punishable by death or imprisonment in excess of one year, (2) do not involve dishonesty or false statement (governed by rule 5.609(*a*)(2)), and (3) are within ten years (governed by rule 5.609(*b*)). Rule 5.609(*a*)(1) distinguishes between a defendant–witness's prior convictions and an ordinary witness's prior convictions. *United States v. Tse*, 375 F.3d 148, 160, 164 (1st Cir. 2004) ("With respect to the use of prior convictions for impeachment, Rule 609 distinguishes between the accused and mere witnesses."); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 609.05[3][a], at 609–36 (Joseph M. McLaughlin ed., 2d ed. 2011) [hereinafter *Weinstein*] ("Rule 609(a) distinguishes between the accused and other witnesses when prior convictions are used for impeachment."). If the witness is not the defendant, the prior conviction "shall be admitted" unless excluded under rule 5.403 because the conviction's "probative value is substantially outweighed by the danger of unfair prejudice." Iowa Rs. Evid. 5.403, 5.609(*a*)(1); *accord Weinstein*, § 609.05[2], at 609–33. Rule 5.609(*a*)(1) therefore operates as a rule of admission as to an ordinary witness's prior felony convictions. If the

---

[3]All parties agree Redmond's harassment conviction falls within rule 5.609(*a*)(1) as it is not a conviction that involves "dishonesty or false statement" which is governed by rule 5.609(*a*)(2).

State seeks to impeach the defendant with a prior conviction, however, the conviction is only admissible "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Iowa R. Evid. 5.609(*a*)(1); *accord Weinstein,* § 609.05[3][a], at 609–36. Rule 5.609(*a*)(1) acts as a rule of exclusion as to the defendant–witness's prior convictions. The defendant–witness provision is implicated in this case.

The salient feature of rule 5.609(*a*)(1) is the distinction between defendants and witnesses. *See Weinstein* § 609.05[3][a], at 609–36 ("[A] criminal defendant's prior convictions may be excluded in situations that would not justify exclusion concerning other witnesses."). Only when the prior conviction's probative value *outweighs* its prejudicial effect to the accused is the defendant's prior conviction admissible for impeachment purposes. Iowa R. Evid. 5.609(*a*)(1). The prosecution must carry this burden to admit a prior conviction against the accused. *See, e.g., United States v. Rivers,* 693 F.2d 52, 54 n.3 (8th Cir. 1982) (noting "the government's burden at trial to establish the admissibility of prior convictions under Rule 609(a)"); *United States v. Kiendra,* 663 F.2d 349, 353 n.1 (1st Cir. 1981) ("Rule 609(a)(1) actually goes so far as to put the burden on the government to show that probative value outweighs prejudice."). The rule requires the court to determine both the conviction's "probative value" and the conviction's "prejudicial effect," but it does not define the meaning of either concept. The court must use its discretion to make these findings. An appellate court cannot hypothecate the countless individual circumstances that may influence a conviction's probative value or prejudicial effect, but it can provide guidance to the content of these terms.

1. *Probative Value.* To ascertain "probative value," the court must identify what the prior conviction must tend to prove. *See* Alan D. Hornstein, *Between Rock and a Hard Place: The Right to Testify and Impeachment by Prior Conviction*, 42 Vill. L. Rev. 1, 9 (1997) (noting many evidentiary challenges focus on prejudice, but sophisticated approaches also take into account probative value towards credibility). Rule 5.609(*a*) states the prior conviction is "[f]or the purpose of attacking the credibility of a witness." A prior conviction's probative value then must be measured by the degree it undermines the defendant's testimonial credibility; stated inversely, probative value is the extent to which exclusion of the prior conviction evidence inhibits the jury from accurately assessing the defendant's testimonial credibility. Counsel may attempt to show a witness's testimony is unpersuasive in a number of ways, such as showing bias, motive to lie, or flaws in perception. Prior conviction evidence is simply another tool in the attorney's belt.

Rule 5.609(*a*)(1) contemplates all convictions falling within its scope undermine testimonial credibility to some degree. This conclusion flows from the structure of rule 5.609. *See United States v. Lipscomb*, 702 F.2d 1049, 1058 (D.C. Cir. 1983) (concluding the language of Federal Rule of Evidence 609 implies "all felony convictions were somewhat probative of credibility"). Rule 5.609(*a*)(1) mandates the defendant–witness's conviction "shall be admitted if the court determines the probative value . . . outweighs its prejudicial effect." The rule requires the court to consider "the probative value" which implies all prior convictions within the scope of rule 5.609(*a*)(1) meet some minimum degree of probative value. This inference is supported by other classifications made in rule 5.609. For example, rule 5.609(*a*)(1) applies only to convictions with potential sentences in excess of one year, which

implies not all convictions meet the threshold degree of probative value required for rule 5.609(*a*)(1) to apply. Thus, convictions that come within rule 5.609(*a*)(1) meet the minimum probative threshold to be admitted, dependent on their prejudicial effect.

The corollary of the inference that all prior convictions within rule 5.609(*a*)(1) have some probative value is the inference prior convictions all carry different degrees of probative value. *See United States v. Estrada*, 430 F.3d 606, 619 (2d Cir. 2005) ("[T]he gradations among Rule 609(a)(1) crimes, in terms of their bearing on truthfulness, . . . lie at the heart of the . . . analysis . . . under Rule 609(a)(1)."); *accord Weinstein*, § 609.05[3][b], at 609–39 ("Although Rule 609(a)(1) addresses convictions for crimes that do not involve . . . dishonesty or false statement, some felonies are more related to veracity than are others."). The special distinctions made in rule 5.609(*a*)(1) demonstrate that prior convictions do not uniformly bear on a suspect's testimonial truthfulness. Rule 5.609(*a*)(2), for example, concludes crimes of dishonesty or false statement are so probative towards a witness's testimonial credibility that the district court should not have balancing discretion under rule 5.609(*a*) to exclude the convictions. *See Harrington*, 800 N.W.2d 46, 50 (Iowa 2011) ("[P]rior convictions involving dishonesty or false statement are always sufficiently relevant to the truthfulness of the witness's testimony that protections against jury misuse of the prior-conviction evidence is not necessary."). Similarly, rule 5.609(*b*) creates a presumption of exclusion for convictions more than ten years old, which suggests older convictions become less probative. Rule 5.609(*a*)(1) thus tasks courts to use their discretion to ascertain the relative probative value of each prior conviction within the rule's scope.

A narrow set of factors cannot account for all circumstances or conditions that might affect a prior conviction's probative value. Instead, discussion of a nonexhaustive list of circumstances that might affect a conviction's probative value is more useful. *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) (articulating five common circumstances the district court should consider but noting the list "does not exhaust the range of possible factors").[4] The conviction's underlying conduct might affect its probative value. For example, crimes of stealth or premeditation may undermine a witness's testimonial credibility more substantially than crimes of impulse, carelessness, or moral turpitude as perjury encompasses elements of stealth and planning. *See, e.g.,* *Weinstein*, § 609.05[3][b], at 609–39 to 609–40 (noting crimes that imply some dishonesty or stealth, such as theft, often have more probative value then crimes of violence). The need for prior conviction evidence may also affect a conviction's probative value. *Id.* § 609.05[3][e], at 609–43 ("[T]hat a defendant's testimony is important to demonstrate . . . his or her defense constitutes a factor . . . ."). Cumulative evidence, for example, may carry less probative value. By contrast, where the witness has boasted of his credibility, impeachment with a prior conviction may be necessary to ensure the jury does not overvalue the defendant's credibility. *See* Charles Alan Wright & Victor James Gold, 28 *Federal Practice and Procedure: Evidence* § 6134, at 234–35 (1993) [hereinafter Wright & Gold]. The substance of the defendant's testimony could affect

---

[4]The five common circumstances employed in federal court are: (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the degree of similarity between the past crime and the charged crime, (4) the importance of the defendant's testimony, (5) the centrality of the credibility issue. *Weinstein*, § 609.05[3][a], at 609–38. These general circumstances outline high-level relevant circumstances, but, as this opinion's discussion shows, the individual facts of each case may create different, unique applications of these general circumstances.

a prior conviction's probative value as the testimony itself may be inconsequential, noncredible, or conclusively shown credible by other evidence. *Id.* As contemplated in rule 5.609(*b*), the period of time since the prior conviction may affect probative value. *Weinstein*, § 609.05[3][c], at 609–41. Also, the defendant's behavior or conduct since the conviction may show changed or unchanged character which could affect a conviction's probative value. These are nonexhaustive examples of considerations that may affect the probative impeachment value of prior conviction evidence.

2. *Prejudicial Effect.* Prejudicial effect is the extent of the risk that the jury may misuse the prior conviction evidence to decide the case on an improper basis. The prejudice risks for a defendant–witness generally fall into three categories. First, the jury may assume propensity, drawing an inference of present guilt by assuming the defendant acted in conformity with his prior conviction. *Harrington*, 800 N.W.2d at 50; *Hackney*, 397 N.W.2d at 726. Second, the jury may use the prior conviction to infer the defendant is a bad person deserving of punishment and decide the case, in part, on their dislike for the defendant, rather than the defendant's testimonial credibility. *Parker*, 747 N.W.2d at 206 (noting juries may use prior conviction evidence as justification to convict with minimal concern for present guilt); *accord* Gold, 15 Cardozo L. Rev. at 2313 (noting in a criminal prosecution "the jury may ignore the issues and convict because evidence of prior conviction suggests the accused is a bad person who, if not guilty of the crime charged, may be deserving of punishment for something else"). Finally, a jury may overweigh the impeachment value of prior conviction evidence. *Harrington*, 800 N.W.2d at 50 ("[P]rejudice occurs if the fact finder affords undue significance to a witness's prior convictions . . . .");

*see also* Wright & Gold, § 6134, at 243–44 (detailing potential prejudice risks caused by prior conviction evidence).

Just as all convictions within rule 5.609(*a*)(1) contain some probative value, prior convictions, by their nature, always contain some degree of prejudicial risk. The lay jury is often at risk to misuse the evidence as it may have difficulty compartmentalizing evidence as going towards a defendant's testimonial credibility from inferences as to the defendant's character or propensity. Intellectually there is a distinction, but human emotion makes it difficult to separate. *See* Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a),* 38 Emory L.J. 135, 135 (1989) ("[Lawyers] create conceptual distinctions which, though capable of articulation, are not always capable of application either by ourselves or by the juries that ultimately must deal with them.").

Certain circumstances unique to the particular case may make the prejudicial risks more acute. For example, a more heinous prior conviction might cause the jury to believe the defendant is a bad person and lead the jury to decide the case without concern for present guilt. Wright & Gold, § 6134, at 232. Also, our case law has continually cautioned against admitting prior convictions which are similar to the defendant's current charge for fear the jury will assume the defendant's guilt by inferring the defendant acted in conformity with his past conduct. *See, e.g., Harrington,* 800 N.W.2d at 50 (warning convictions of the same character pose a special risk of prejudice); *Parker,* 747 N.W.2d at 210 (same); *Hackney,* 397 N.W.2d at 728 (same); *Martin,* 217 N.W.2d at 542–43 (same). Juries may be more likely to misuse prior conviction evidence in cases with weak evidence or cases that are he-said-she-said swearing matches. *United States v. Sanders,* 964 F.2d 295, 299 (4th Cir.

1992) (finding risk of prejudice could "tip the balance" in an uncorroborated credibility contest). Multiple convictions, similarly, could increase the risk of jury misuse. These examples are not always authoritative, nor are the examples exhaustive. Rule 5.609(*a*) demands the district court exercise discretion in accord with the circumstances surrounding a particular decision to ascertain the prejudicial effect prior conviction evidence causes the accused.

3. *Balancing Probative Value and Prejudicial Effect.* As stated, rule 5.609(*a*)(1) as applied to the accused is a rule of exclusion. This rule saddles *the prosecution* with the burden to show the defendant's prior conviction evidence is more probative to the defendant's testimonial credibility than prejudicial to the defendant. Iowa R. Evid. 5.609(*a*)(1).

The balancing process, like all of rule 5.609(*a*), requires the district court to exercise judgment. The court should identify and calculate the probative value of the prior conviction as it relates to testimonial credibility. It is equally important that the court identify what specific prejudice might be realized. Only then can the court utilize meaningful discretion to assess the prior conviction's prejudicial effect. Weighing prejudicial effect requires probability estimates. How likely is the jury to assume guilt through propensity or bad character, or how likely is the jury to overemphasize the prior conviction's impeachment value? The greater the probability of prejudice, the less likely the prosecution can meet its burden.

Rule 5.609(*a*) is an ideologically compromised rule of evidence which requires the quantifying and balancing of vaguely described terms. The rule strongly influences the defendant's decision to testify, and it can affect the outcome of trials. The district court must exercise its discretion and hold the prosecution to its burden of establishing that the

prior conviction evidence has probative value which exceeds its prejudicial effect to the accused.

With these principles in mind, we turn to the application of rule 5.609(*a*) to the admission of Redmond's first-degree harassment conviction.

**C. Application of Rule 5.609(*a*)(1).** First our task is to ascertain the probative value of Redmond's prior first-degree harassment conviction, or, stated another way, to determine the extent to which the evidence undermines Redmond's testimonial credibility. The record does not reveal the circumstances surrounding Redmond's first-degree harassment conviction except that the conviction occurred on August 21, 2009, approximately two months before the present incident. This case was a he-said-she-said case, and Redmond and P.M.'s credibility were essential. Redmond's testimony was brief, and his defense was he was intoxicated, passed out early in the evening, and did not wake up until the officer arrested him.

In light of these facts, we have difficulty ascertaining extensive probative value in the harassment conviction. Harassment has several definitions, but primarily is defined as "[c]ommunicates with another . . . without legitimate purpose and in a manner likely to cause the other person annoyance or harm." Iowa Code § 708.7(1)(*a*)(1). Since the State did not introduce the circumstances surrounding the harassment, we assume this general definition defines Redmond's underlying conduct. Harassment thus does not generally involve stealth or theft—characteristics of perjury that impeach testimonial credibility to some degree. Wright & Gold, § 6134, at 233. The crime does not necessarily even require premeditation, but is often impulsive. *Id.* ("[C]rimes . . . involving premeditation are relatively higher in probative value because

they suggest the witness is willing to break the law when it furthers his interest."). The conviction's probative value is limited to showing Redmond has intended to disturb or upset others. This showing may allow the jury to infer Redmond might disregard his duty to testify truthfully based upon his previous disregard of social communicative norms for self-gratification. But "crimes based on conduct that is either violent or disorderly are ordinarily not" as probative toward testimonial credibility. *Weinstein*, §§ 609.04[3][b], 609.05[3][b], at 609–26.1 to 609–26.2 & nn.22–25, 609–39 & n.17 (citing collections of cases).

Ascertaining the prejudicial effect of the prior conviction as to Redmond is the next step. To ascertain prejudicial effect, we first must articulate what prejudicial risks are present. Here, the risk of propensity is overwhelmingly present, as well as the risk the jury may assume Redmond's bad character as a reason for current guilt. The propensity risk is obvious, so obvious it was the reason the State argued the harassment conviction should be admitted:

> I think the fact that the defendant has just recently been convicted of Harassment in the First Degree, I believe while intoxicated as well, goes to establish that this type of behavior—that the defendant's impeachment on this offense is proper . . . .
>
> . . . .
>
> I think it's clear that the defendant acts in an aggressive and sometimes obviously violent or threatening manner when intoxicated given that previous conviction. . . . I was just going to raise it for the purpose of letting the jury know or making the jury aware that it exists.

Several circumstances make the propensity risk substantial. First, harassment is "communic[ation] . . . without legitimate purpose and in a manner likely to cause the other person annoyance or harm." Iowa Code § 708.7(1)(*a*)(1). Notably, this definition also encompasses Redmond's alleged conduct charged in this case. Juries are more susceptible to

making an improper propensity inference when the prior conviction involves a similar crime. "As a general guide, those convictions which are for the same crime should be admitted sparingly . . . ." *Daly*, 623 N.W.2d at 802 (quoting *Gordon*, 383 F.2d at 940) (internal quotation marks omitted)). This risk is heightened because the prior harassment was not defined for the jury so jurors were free to speculate what behavior may have formed the basis of Redmond's prior conviction.

The evidence in this case also creates a substantial risk the jury will improperly use the prior conviction evidence to assume guilt through propensity. The case was tried to the jury based on he-said-she-said facts. As the State aptly observed in its closing argument "all this case boils down to . . . is whether or not [P.M.] is telling the truth or whether or not the defendant is." There was no corroborating evidence or witness. P.M. said she went to Redmond's room and he exposed himself, and Redmond says otherwise. Their testimony is irreconcilable. In a similar situation, the United States Court of Appeals for the Fourth Circuit reasoned:

> The assault prosecution turned essentially upon the jury's assessment of the relative credibility of Sanders and Jenkins, the direct protagonists, who gave widely conflicting versions of the stabbing. In such a situation, evidence having no possible basis except to show a propensity for violence on the part of the defendant obviously has the capacity to tip the balance in such a swearing contest.

*Sanders*, 964 F.2d at 299. Redmond's harassment conviction, similarly, "ha[d] the capacity to tip the balance" in this swearing contest. *Id.* The harassment conviction creates an acute risk the jury will resort to propensity or assume his guilt based upon recent bad character as a way to resolve the irreconcilable, uncorroborated evidentiary dispute.

Rule 5.609(*a*)(1) finally requires the court to balance the prior conviction's probative value with its prejudicial effect. The harassment conviction undermines Redmond's testimonial credibility to some extent, as it shows he is willing to disregard social conventions for self-gratification. But this inference can be derived from most any crime. The similarities between Redmond's harassment conviction and his current charge, and the he-said-she-said nature of the case, create a substantial probability the jury will misuse the prior conviction evidence and assume present guilt based upon his prior conviction. The State has fallen far short of meeting its burden of showing the probative value of Redmond's harassment conviction outweighs its prejudicial effect to Redmond. Substantial evidence does not support the district court's decision to admit the prior conviction. Accordingly, the district court abused its discretion by admitting Redmond's harassment conviction under rule 5.609(*a*)(1).

**D. Admission Was Not Harmless Error.** A trial court's erroneous admission of evidence is only reversed on appeal if "a substantial right of the party is affected." *Parker*, 747 N.W.2d at 209 (quoting Iowa R. Evid. 5.103(*a*)). An erroneous evidentiary ruling is harmless if it does not cause prejudice. *See id.* Where, as here, the party claims nonconstitutional error, prejudice occurs when the party has "been 'injuriously affected by the error' or . . . has 'suffered a miscarriage of justice.' " *Id.* (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)).

Past cases have held the erroneous admission of the defendant's prior conviction does not violate the defendant's "substantial right[s]" when overwhelming evidence supports his conviction. *Id.* at 210; *see also State v. Martin,* 704 N.W.2d 665, 673 (Iowa 2005); *State v. Holland*, 485 N.W.2d 652, 656 (Iowa 1992). This is not that type of case. P.M.

testified to one version of the events on that evening; Redmond to another. There was little corroborating evidence. The district court's admission of Redmond's prior conviction carried an acute risk of jury misuse. The district court's error was not harmless.

## VI. Disposition.

The district court abused its discretion in permitting the State to impeach Redmond with his prior first-degree harassment conviction. The error was not harmless. Accordingly the decision of the court of appeals is vacated, the district court judgment is reversed, and the case is remanded to the district court for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL.**

All justices concur except Mansfield, J., who takes no part.