# IN THE COURT OF APPEALS OF IOWA

No. 14-0976
Filed July 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DOUGLAS EUGENE HOPPE,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Lyon County, Nancy L. Whittenburg, Judge.


        Douglas Hoppe appeals his conviction for conspiracy to manufacture more than five grams of methamphetamine, contending that the district court erred in admitting certain evidence.  **AFFIRMED.**


        Adam Gregg, State Public Defender, and Billy A. Oyadare, Assistant Public Defender, for appellant.

        Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, and Shayne L. Mayer, County Attorney, for appellee.


        Heard by Danilson, C.J., Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Douglas Hoppe appeals his conviction for conspiracy to manufacture of methamphetamine (more than five grams but not more than five kilograms), a class "B" felony, under Iowa Code section 124.401(1)(b)(7) (2013).[1]  We affirm.

### I.  Background Facts and Proceedings.

By amended trial information, the State charged Hoppe with four counts: (1) manufacture, deliver or possess with intent to manufacture or deliver methamphetamine, or conspiracy to manufacture, deliver, and/or possess with the intent to manufacture or deliver methamphetamine, in violation of Iowa Code sections 124.401(1)(b)(7), subject to sections 124.401A, 124.411,and 124.413; (2) gathering where controlled substances are being unlawfully used, in violation of sections 124.407, 902.8, and 902.9(3); (3) tampering with, possessing, or transporting anhydrous ammonia, in violation of section 124.401F; and (4) possession of marijuana, a schedule I controlled substance, first offense, in violation of section 124.401(5).  Count one pertains to the span of time between May 2012 and the date of Hoppe's arrest, June 5, 2013.

The amount of methamphetamine seized after Hoppe's arrest weighed a little over three grams.  Nevertheless, the State charged Hoppe with manufacturing or conspiring to manufacture over five grams of methamphetamine.  A violation concerning more than five grams of methamphetamine, but less than five kilograms, is a class "B" felony, while a violation concerning five grams or less of methamphetamine is a class "C" felony.

---

[1] All references herein are to the 2013 Code of Iowa.

*See* Iowa Code § 124.401(1)(b)(7), (c)(6). Because Hoppe was charged with the more serious class "B" felony offense, he was subject to a twenty-five-year sentence, rather than a shorter ten-year sentence for the lesser class "C" felony offense. Iowa Code § 902.9(2), (4).

In a notice of additional minutes of testimony, the State listed as a witness Nila Bremer, an Iowa Department of Criminal Investigations criminalist, stating she would testify to "the amount of methamphetamine that could have been produced with the amounts of ingredients purchased by [Hoppe] and co-conspirators. The witness will testify that . . . her analysis would show that the yield of methamphetamine lab would be in excess of five (5) grams." Prior to trial, Hoppe filed a motion to adjudicate law points. His motion asserted, among other things, that the State's proposed approach, i.e., theoretical yield analysis, to meeting its burden of proof concerning the amount of methamphetamine to which Hoppe manufactured or conspired to manufacture violated his right to due process. Put another way, Hoppe asserted the use of expert testimony to project a potential amount of methamphetamine, inferred from known amounts of pseudoephedrine purchased, violated his constitutional due process rights. The district court overruled Hoppe's motion and held that the State could use expert testimony to support and establish the conspiracy charge.

At trial, the State offered a report prepared by Bremer that contained an analysis and calculations of theoretical yields of the amount of methamphetamine Hoppe could have produced based on the pseudoephedrine hydrochloride purchased by Hoppe and his co-conspirators. When asked whether Hoppe objected to the introduction of the report, Hoppe's counsel responded, "No

objection." Hoppe made no objections to Bremer's theoretical yield testimony, nor did he object when Bremer testified that in her expert opinion Hoppe could have manufactured more than five grams of methamphetamine based upon the amount of pseudoephedrine or ephedrine purchased.

The State offered additional evidence to establish Hoppe manufactured or conspired to manufacture more than five grams of methamphetamine. That evidence included testimony by five men that they had collaborated with Hoppe to manufacture methamphetamine. One such co-conspirator, Robert Stettnichs, testified that Hoppe had been providing him methamphetamine since sometime in 2012, at first for free and later in exchange for pseudoephedrine pills. Stettnichs traveled to Sioux Falls some thirteen to sixteen times to purchase pseudoephedrine pills for Hoppe. The purchases were corroborated by independent evidence. Each box he purchased contained ninety-six pills. He testified that Hoppe would give him half to three-quarters of a gram of methamphetamine in exchange for a box of pseudoephedrine pills. Other co-conspirators, Michael VanSurksum, Wayne Koele, and Dalles Dodge had similar dealings with Hoppe. Anthony Lucas sold pseudoephedrine pills to Hoppe in exchange for cash and, on some occasions, some methamphetamine. After his arrest, Hoppe told officers he manufactured methamphetamine and that with four boxes of pseudoephedrine he could make approximately a golf ball size quantity of methamphetamine.

After he rested his case, Hoppe filed a motion for judgment of acquittal, claiming the State failed to meet its burden on the conspiracy charge. Hoppe made the general claim that the State failed to meet its burden of proof but made

no reference to the violations of his constitutional rights Hoppe now alleges in his appeal. The motion was overruled. The court sustained Hoppe's motion for judgment of acquittal concerning the charge of tampering with, possessing, or transporting anhydrous ammonia, and that count was not submitted to the jury.

The jury returned guilty verdicts on the remaining three counts—conspiracy to manufacture methamphetamine, promoting a gathering where controlled substances are unlawfully used, and possession of marijuana. Further, the jury specifically found "the amount of mixture or substance containing a detectable amount of methamphetamine that [Hoppe] conspired with others to manufacture . . .was more than [five] grams but not more than [five] kilograms."

Thereafter, Hoppe filed a motion in arrest of judgment. Hoppe noted that his position was "rooted in his arguments earlier stated in his motion to adjudicate." The motion further argued that the State's theoretical yield analysis is unconstitutional because it violates the equal protection clauses of both the United States and Iowa Constitutions. Hoppe also asserted "the statute,"[2] as applied to him, is unconstitutionally vague, impermissible, and "[a]lthough a statute may not be 'vague' in the ordinary sense of the word, it may yet violate due process requirements if it fails to provide explicit standards for those who enforce it." The district court overruled the motion. Hoppe was later sentenced

---

[2] Hoppe made no reference to any particular statute.

to concurrent terms of incarceration not to exceed fifty years, ten years, and one year, respectively for the three convictions.[3]

Hoppe now appeals his conviction of conspiracy to manufacture, deliver, and/or possess with the intent to manufacture or deliver methamphetamine.[4] He asserts the district court erred in allowing the State to project the amount of methamphetamine that could have been produced by Hoppe and his co-conspirators based on the alleged quantity of precursor substances they had purchased. Specifically, Hoppe alleges that this approach, known as theoretical yield analysis, (1) violates his constitutional rights to due process; (2) violates his constitutional rights to equal protection; and (3) is unconstitutionally vague as applied to him. The State counters that Hoppe failed to preserve several of his claims for review on appeal, but it argues that in any event, each claim fails on its merits.

---

[3] The fifty-year sentence was imposed for the conspiracy conviction—two times the indeterminate maximum for a class "B" felony. For persons convicted of a second or subsequent offense under chapter 124, Iowa Code section 124.411(1) authorizes an imprisonment term of up to three times the term otherwise authorized. The ten-year sentence was imposed on the gathering conviction, and the one-year sentence was imposed on the possession of marijuana conviction.

[4] We observe that witness names were not placed at the top of each page where transcript testimony appears in the parties' appendix. *See* Iowa R. App. P. 6.905(7)(c) ("The name of each witness whose testimony is included in the appendix *shall* be inserted on the top of *each* appendix page where the witness's testimony appears." (emphasis added)). Having the name at the top of each page makes it much easier for us to navigate an appendix, particularly when filed in electronic form. Additionally, omissions of transcript pages were not indicated by a set of three asterisks. *See* Iowa R. App. P. 6.905(7)(e). Furthermore, the exhibits included in the appendix were not concisely described in the table of contents. *See* Iowa R. App. P. 6.905(4)(c). By this note, we do not single out these parties or their attorneys, for we have made similar observations in countless appeals. Our comment is directed to the appellate bar. While the noted infractions may seem trivial, the violated rules are not just some rigmarole designed to create more work for the appellate lawyer. Compliance with the rules saves time, reduces frustration, and assists this court in meeting its mandate to achieve maximum productivity in deciding a high volume of cases. *See* Iowa Ct. R. 21.11.

## II. Scope and Standards of Review.

We review decisions made by a trial court that implicate a defendant's constitutional rights de novo. *See State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015). However, we review evidentiary rulings, including the admissibility of expert testimony, for an abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). We will not reverse on appellate review unless the district court's decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *State v. Redmond*, 803 N.W.2d 112, 117 (Iowa 2011).

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (internal quotation marks omitted). "We will uphold a verdict if it is supported by substantial evidence." *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000).

## III. Discussion.

Hoppe does not argue the theoretical yield evidence was inadmissible, nor could he. At trial, Hoppe stated he had "no objection" to Bremer's report and made no objections to her testimony. Any evidentiary objection was waived. In any event, such an objection would have no doubt been fruitless. In reviewing nearly identical circumstances, our supreme court held a district court did not err in admitting the same criminalist's "expected yield from precursors" report. *State v. Casady*, 597 N.W.2d 801, 806-07 (Iowa 1999). The court *Casady* found Bremer's testimony

> clearly relevant because it was necessary to prove that the conspiracy was to manufacture methamphetamine, and under Iowa Code section 124.401(1)(b)(7), it was necessary for the jury to determine if Casady conspired to make more than five grams of it. The only way for the jury to determine that, without merely speculating, was to hear from an expert.

*Id.* at 806. In another case, a panel of this court followed in the footsteps of *Casady* and concluded Bremer's potential yield evidence was relevant and had sufficient indicia of reliability to be admissible. *State v. Perry*, No. 03-1822, 2005 WL 67531, at *3-4 (Iowa Ct. App. Jan. 13, 2005).

Recognizing the futility of attacking the admissibility of Bremer's evidence in this case, Hoppe identifies on appeal the "central issue [as] whether it is legally permissible, absent a clear statutory authorization, for the State to project the amount of methamphetamine that could have been produced by [Hoppe] and his confederates based on the alleged quantity of precursor substances claimed to have been purchased." Essentially he asserts the State cannot use theoretical yield evidence to boot strap a class "C" felony offense (five grams or less) to a class "B" felony (more than five grams) when the amount seized was less than five grams. Put another way, Hoppe contends, without saying so in so many words, that if the theoretical yield evidence is not considered, the State failed to establish he conspired to manufacture over five grams of methamphetamine, and his constitutional rights were thereby violated. The fatal flaw in Hoppe's argument is that, even without considering the theoretical yield evidence, other evidence supports the verdict that Hoppe conspired with others to manufacture more than five grams of methamphetamine during the May 2012-June 5, 2013 period.

One of Hoppe's cohorts in crime, Robert Stettnichs, testified that Hoppe had been providing him methamphetamine since sometime in 2012, at first for free and later in exchange for pseudoephedrine pills. Stettnichs made some thirteen to sixteen pseudoephedrine pill purchases for Hoppe. The pills were purchased by the box. This was corroborated by independent evidence. Stettnichs testified that Hoppe would give him half to three-quarters of a gram of methamphetamine he made in exchange for a box of pseudoephedrine pills. Putting pencil to paper, a jury could reasonably conclude Hoppe furnished Stettnichs with 6.5 to 12 grams of methamphetamine manufactured from the pills provided by Stettnichs during the course of the conspiracy. This evidence alone clears the five-gram hurdle.[5] Viewing this evidence, as well as the evidence of the actual weight of the seized methamphetamine, we conclude substantial evidence supports the jury's finding that Hoppe "conspired with others to manufacture an amount [of methamphetamine] that was more than 5 grams but not more than 5 kilograms." With the verdict amply supported by sufficient other evidence, we need not consider Hoppe's constitutional arguments concerning the projected yield evidence, nor do we need to consider the State's error preservation arguments.

---

[5] In interpreting Iowa Code § 124.401(1)(b)(7), the supreme court held the statute authorizes "the State to aggregate any manufactured substance falling under either or both of [the manufacturing and conspiracy] alternatives in seeking to establish a prohibited manufacture of methamphetamine." *State v. Royer*, 632 N.W.2d 905, 908-09 (Iowa 2001).

*IV. Conclusion.*

Substantial evidence supports the jury's verdict, even without considering the theoretical yield analysis evidence. We therefore need not address Hoppe's due process, equal protection, and vagueness claims concerning the sufficiency of the theoretical yield evidence. Accordingly, we affirm.

**AFFIRMED.**