STATE of Iowa, Appellee,

v.

Timothy Lynn STUFFLEBEAM, Appellant.

No. 60255.

Supreme Court of Iowa.

Dec. 21, 1977.

Robert W. Thompson and Gary W. Kazragis, of Rickert & Thompson Law Office, Reinbeck, for appellant.

Richard C. Turner, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Jay A. Mardini, Asst. County Atty., Waterloo, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

Defendant appeals his jury conviction of larceny in excess of $20 in violation of §§ 709.1 and 709.2, The Code. We find his assignments of error to be without merit and affirm the judgment of the trial court.

Evidence taken in the light most consistent with the verdict showed that on June 15, 1976, Glen Frohn left his new black van parked in front of a Waterloo lounge while he went to work on a 3 p. m. to 11 p. m. shift at a nearby factory. After finishing work at 11 p. m. Frohn noted the van was parked where he had left it. He then went into the lounge. After 20 minutes Frohn came out of the lounge to find his van was gone. After unsuccessfully looking for it he went back into the lounge and called police. The Waterloo police were given a detailed description of the van which had special tires and wheels.

Timothy Lynn Stufflebeam (defendant) came to the lounge early in the evening of June 15, 1976 in company with Ruth Gardner, Terry Allen Peters, and several other people. Defendant and Peters left the lounge a short time before the van disappeared from the adjacent parking lot. They were not present in the lounge when Frohn came in and reported his van had been stolen. Stufflebeam however returned to the lounge an hour and one-half later.

Gardner and defendant later left the lounge and defendant told Gardner he and Peters had stolen the van in order to take its special tires. Defendant told Miss Gardner he and Peters had "hot wired" the van and defendant had driven it to a location known as "the pits." Defendant told Miss Gardner he and Peters had taken the tires from the van and put them in Peters's car. He further told Miss Gardner that he and Peters came back to the lounge and put the two front tires from the van in the trunk of defendant's car. The wheels and tires were worth in excess of $400.

Early in the morning of June 16, 1976 Waterloo police officers were called to investigate a reported accident which occurred near the pits. That investigation led

them to an auto salvage yard where they noticed the stolen black van sitting without tires or wheels on a nearby abandoned road. Some of the lug nuts and washers were still attached to the wheel rims of the van.

The officers then returned to the salvage yard and examined an automobile which they believed had been involved in the separate accident at the pits. They saw no one present in the salvage yard but did see a mobile home parked there. Locks were missing from the door. Defendant and Peters were asleep in sleeping bags on the mobile home floor. One of the officers walked out to the automobile they suspected of being involved in the accident. Through the car windows he saw a number of lug nuts, washers, and adapters on the automobile's floor. These were similar to the lug nuts, washers, and adapters the officers had seen on the van.

Peters gave the officers permission to take some of the lug nuts and adapters to see if they fit on the van. They did. Peters opened the trunk of his automobile to show a set of tires and wheels which matched Frohn's description of those missing from his van.

In an attempt to examine the other car involved in the accident at the pits the officers, with permission, examined the pockets of defendant's trousers for car keys. A large washer was found in a pocket. This washer was similar to the washers on the van and on the floor of the other automobile. Defendant was arrested for larceny. While he was held in jail his car was towed away from where it had been parked across the alley from the tavern. Thereafter defendant's parents called Miss Gardner and asked her to get defendant's car from the towing service and drive it to New Hampton and leave it behind a hotel there.

On June 19, 1976 Miss Gardner, accompanied by a friend, did so. Defendant's father followed in his truck. When they arrived in New Hampton, in answer to a request of defendant, Miss Gardner and defendant's father opened the trunk of the car to see if the police had taken two tires out. Two tires and mag wheels were in the trunk. · These were similar to the .tires and mag wheels stolen from Frohn's van.

Thereafter Miss Gardner gave statements to the police. Shortly after these statements were given defendant was released from jail and. confronted Miss Gardner at the home of Miss Gardner's mother. Defendant asked Miss Gardner if she had turned him in to the police, indicating he understood she was going to testify against him at his trial. Defendant then slapped Miss Gardner and stated if he had to do it again he would leave a mark and she would end up in the hospital. On a second occasion defendant told Miss Gardner he did not like her turning him in or testifying against him and hit her with his fist. Miss Gardner suffered a black eye from this blow.

At trial Miss Gardner testified, over defendant's objection, of the threats and assaults against her.

I. Defendant's first assignment of error asserts the trial court should have sustained his motion for new trial because, it is claimed, (1) the trial court erred in its accomplice instruction and (2) there was insufficient evidence to corroborate the testimony of Miss Gardner. The assignment is clouded by an indication of the trial court, out of the presence of the jury, that it would find as a matter of law that Miss Gardner was an accomplice.

In its instruction to the jury the trial court did not indicate any finding Miss Gardner was an accomplice as a matter of law. The trial court defined the term "accomplice" and instructed the jury on the necessity of corroborating the testimony of an accomplice under § 782.5, The Code. This instruction adopted instruction # 501.8 of the uniform instructions of the Iowa state bar association. We expressly approved that instruction in State v. Gray, 199 N.W.2d 57, 59 (Iowa 1972).

We believe there was no prejudicial error in the ruling of the trial court. It seems obvious that Miss Gardner was not an accomplice as a matter of law. We have said:

"A witness is an accomplice if he could be indicted and convicted of the same crime.

The question of who are accomplices is one of law for the court when the facts as to the witness's culpability are neither disputed nor susceptible of different inferences; *when these facts are disputed or susceptible of different inferences, the question is one of fact for the jury.* (Authority)." *State v. Sallis*, 238 N.W.2d 799, 802 (Iowa 1976).

Here the evidence is clearly susceptible of different interpretations and the trial court was wrong in first indicating it would find Miss Gardner to be an accomplice as a matter of law. But the trial court was not in error in the instruction as submitted because the question was properly one for the jury. The defendant lost nothing from the trial court's instruction except the unfair advantage of an error. There is no basis for an appeal. Defendant's first contention is without merit.

■ II. Defendant separately argues there was insufficient evidence to corroborate Miss Gardner's testimony under § 782.-5, The Code. It is quite likely the jury found Miss Gardner was not an accomplice. However we must consider the claim because it is remotely possible the jury believed she was an accomplice and, under the court's instructions, her testimony was sufficiently corroborated.

■ We discussed the rules relating to the sufficiency of evidence corroborating an accomplice to the crime in *State v. Jennings*, 195 N.W.2d 351, 356–357 (Iowa 1972). Frohn's testimony showed the commission and circumstances of the crime. Defendant was seen with Peters in the lounge after the van had been stolen. Another witness, Miss Lomax, testified defendant phoned her to protest Miss Gardner testifying against him. Miss Lomax quoted defendant as stating Miss Gardner's testimony could "hang him." The police officers found the two stolen tires and wheels in Peters' car. Defendant and Peters were together in the salvage yard mobile home near the stolen van. Footprints consistent with defendant's were found near the van. A washer

similar to that taken from the van was found in defendant's trousers. We believe this evidence is ample to corroborate the testimony of Miss Gardner. Defendant's contention to the contrary is without merit.

■ III. Defendant's other assignment complains of the ruling by the trial court which admitted the testimony of his threats and assaults against Miss Gardner. Defendant believes this testimony was essentially that of another crime and not admissible under any of the exceptions discussed in *State v. Johnson*, 224 N.W.2d 617, 619 (Iowa 1974). The flaw in defendant's argument is in the first premise. It is not necessary to consider whether the evidence of assaults and threats falls within or without the rule described in *Johnson*. The evidence was not offered as that of another crime. Rather it was offered to show admission by conduct. It was admissible for that purpose. 2 Jones on Evidence, Gard, § 13:46 at 518 (6th ed. 1972); McCormick on Evidence, § 273 at 660–662 (2d ed. 1972); II Wigmore on Evidence, § 278 at 124 (3rd ed. 1940).

An admission by conduct is a concept quite apart from bare evidence of a separate crime as was proscribed with the exceptions stated in *Johnson*. The distinction stems from the comparative relevancy and prejudice which is to be balanced under the rule. Such evidence, except for the stated exceptions, is generally thought not to be sufficiently probative to merit its admission in view of the prejudice which would thereby result.

■ Admission by conduct[1] is a separate and distinct concept. An attempt by a party to improperly, even illegally, influence a witness is thought to be an admission by conduct. Such an admission does have independent probative value on the issue to be tried.

■ Our own cases have recognized the admissibility of evidence that a party has

---

1. Not to be confused with a tacit admission. See *State v. Kelsey*, 201 N.W.2d 921, 925–927 (Iowa 1972).

illegally attempted to influence a witness or juror. *State v. Zbornik*, 248 Iowa 450, 453, 80 N.W.2d 735, 736–737 (Iowa 1957); *Gregory v. Sorenson*, 214 Iowa 1374, 1379–1380, 242 N.W. 91, 94 (1932); *Kidd v. Ward*, 91 Iowa 371, 376, 59 N.W. 279, 281 (1894). These cases generally recognize it is appropriate, in admitting such evidence, to give a cautionary instruction to the jury regarding its limited purpose. We note such an instruction was not given in the instant case but can assume no error by reason of the omission because no such instruction was requested. If defendant wishes evidence admissible for one purpose limited to such purpose, he must ask for instruction so limiting it. *State v. Pilcher*, 158 N.W.2d 631, 637–638 (Iowa 1968); *Allen v. Lindeman*, 259 Iowa 1384, 1389, 148 N.W.2d 610, 614 (1967).

Evidence of a felonious attack on a witness was disapproved in *State v. Clay*, 220 Iowa 1191, 1196–1199, 264 N.W. 77, 81 (1935). However there is no indication of an admission by conduct in *Clay*. There was no testimony in that case that the separate assault upon the witness was in any way related to an attempt to corrupt her testimony.

We hold evidence of defendant's assault and threats upon Miss Gardner was properly admitted into evidence as an admission by defendant's conduct. Defendant's claim to the contrary is without merit.

As defendant's assignments are without merit the judgment of the trial court is hereby affirmed.

AFFIRMED.