# IN THE COURT OF APPEALS OF IOWA

No. 16-0027
Filed April 5, 2017

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**RODERICK WARD,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

 Roderick Ward appeals from his conviction following jury trial for second-degree murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

Roderick Ward appeals from his conviction following jury trial for second-degree murder in violation of Iowa Code section 707.3 (2014). Ward contends the district court abused its discretion in allowing testimony by a jailhouse informant and a shotgun demonstration at trial. Because we find the district court did not abuse its discretion, we affirm.

**I. Background Facts & Proceedings.**

On August 1, 2014, Ward and his girlfriend, Katelyn Randall, invited people to their home for a gathering. The decedent, Gary Wilson; Ward's uncle, Reggie Taylor; and Taylor's wife were in attendance along with a number of other individuals. Wilson arrived at Ward's home in the afternoon, and Ward and Wilson were drinking alcoholic beverages throughout the day. The gathering continued through the evening and night. Ward and Wilson continued drinking. Wilson began acting obnoxious and aggressive, attempting to pick fights. Wilson did not get physical with anyone but his behavior began to anger Ward.

After most of the people had gone—only Ward, Wilson, Randall, Taylor, and Taylor's wife remained—Wilson's behavior continued and Ward became more angry. Ward raised his voice at Wilson and told him to leave. Ward held a shotgun as Ward and Wilson continued exchanging words.

Randall testified she saw Wilson in the street in front of the house and Ward holding the shotgun and moving toward Wilson. Randall stated she turned to go inside because she "didn't want to see it if something were to happen." As Randall reached the front door, she heard gunshots. Randall turned to see Wilson and Ward both lying in the street. She believed Ward had fallen down.

Taylor was also outside at the time. Taylor testified he was searching for a cigarette inside his truck when he heard the gunshots and ducked for cover. When he looked up, Taylor saw Wilson lying in the street. Taylor also saw Ward running from the scene.

Randall stated after she heard the gunshots she went inside to check on her children. Randall testified she saw Ward come into the house, retrieve a Denver Broncos blanket from the living room, leave the house, and retreat down the street.

Police and paramedics arrived on the scene and made lifesaving efforts, but Wilson did not survive his injuries. Police located five empty 12-gauge shotgun shells and a cell phone in the street near Wilson. The medical examiner testified Wilson sustained three gunshot wounds—one to the left forearm and two to the abdomen. The medical examiner stated the wounds were caused by a shotgun that was likely fired at fairly close range.

Ward was not at the house when police arrived, but later approached the line of police tape securing the scene. Officers detained Ward for questioning. The cell phone discovered in the street rang when officers called the number Ward provided during the interview. Bloodstains found on the pants Ward was wearing at the time he was detained matched Wilson's DNA.

The next morning a man walking along the street near Ward's house found a 12-gauge pump-action shotgun wrapped in a Denver Broncos blanket hidden in some bushes and alerted police. DNA testing confirmed several spots of blood on the shotgun matched Wilson.

On September 8, 2014, Ward was charged by trial information with first-degree murder in violation of Iowa Code section 707.2(1)(a).  Before trial, Ward spoke to Trevino Fox, another inmate in jail.  At the jury trial beginning October 20, 2015, Fox testified Ward told Fox he shot Wilson with a "shotgun pump."  Over defense counsel's objection, Fox further testified regarding Ward's plan to threaten witnesses:

> Q. Did you have a discussion with Roderick Ward about [Randall] not testifying?  A. Yes, sir.
> Q. Can you describe those conversations?
> . . . .
> A. he said that she was coming to testify and he didn't—he thought that her testimony would be very damaging to the case.
> Q. And did—can you describe any further conversations you had about—with Roderick Ward about his baby mama testifying in this case?  A. He said that he wanted, you know, to get rid of her.  He said that he had—it was a plot for her, she was supposed to come visit him on a Friday, and then he was supposed to have someone follow her.
> . . . .
> Q. Did Mr. Ward tell you that—what he was going to have done when his babies' mother visited him on that Friday?  A. He said he wanted her to disappear, you know.  He said he didn't want nothing, you know, have nothing to do with her.  Said he was going to make sure she didn't show up to testify.
> . . . .
> Q. After that did—or at that point did Roderick Ward make any comments about his uncle in Chicago?
> . . . .
> A. He said that he had made a phone call and said that he was going to have some friends of his holler at the uncle.
> Q. And in—what's "holler" mean to you?  A. Well he was going to apply pressure to keep him from testifying.

The jury found Ward guilty of the lesser-included offense of second-degree murder.  Ward now appeals.

**II. Standard of Review.**

"We review the district court's evidentiary rulings for abuse of discretion." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). "A court abuses its discretion when it exercised its discretion on 'grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008) (citations omitted).

**III. Analysis.**

*A. Informant Testimony.* Ward contends the district court should not have permitted Fox's testimony with respect to Ward's statements that he intended to threaten Randall and Taylor because it was irrelevant and the probative value was substantially outweighed by the danger of unfair prejudice.[1]

Ward first argues Fox's testimony was irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. Irrelevant evidence is not admissible. Iowa R. Evid. 5.402. "The standard for relevance is a relatively low bar . . . ." *State v. Neiderbach*, 837 N.W.2d 180, 238 (Iowa 2013) (Appel, J., concurring specially).

---

[1] To the extent Ward argues admission of other portions of Fox's testimony was improper, error was not preserved because defense counsel did not object to other portions at trial. Ward contends error was preserved by filing and obtaining a ruling on the motion in limine. The general rule is that obtaining a ruling on a motion in limine does not preserve error, but "a defendant need not renew his objections at trial if the prior ruling amounts to an unequivocal holding concerning the issue raised." *State v. Harlow*, 325 N.W.2d 90, 91 (1982). Here, the motion in limine addressed only "[a]ny testimony from witnesses about alleged statements made by Roderick Ward about efforts to have witnesses not appear for trial." The motion in limine did not request suppression of Fox's testimony as a whole. Objections at trial were necessary to preserve error.

Ward contends defense counsel admitted in the opening statement Ward shot Wilson and the only issue in dispute was the existence of malice aforethought and premeditation. Thus, Ward argues Fox's testimony was not relevant to the issues of consequence to the determination of the action. We disagree. Defense counsel never directly stated Ward shot Wilson in the opening statement, and the State was required to prove the elements of the crime. In order to establish Ward's guilt for the crime charged—first-degree murder—the State was required to show Ward killed Wilson "willfully, deliberately, and with premeditation." Iowa Code § 707.2. Ward's discussion of threatening witnesses has the tendency to make Ward's guilt and his connection to the crime more probable. Thus, Fox's testimony relaying statements by Ward about preventing witnesses from testifying at trial was relevant to the elements of the crime charged.

Ward also contends the probative value of Fox's testimony is outweighed by the danger of unfair prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Iowa R. Evid. 5.403.

Our supreme court has held "[a]n attempt by a party to improperly, even illegally, influence a witness is thought to be an admission by conduct. Such an admission does have independent probative value on the issue to be tried." *State v. Stufflebeam*, 260 N.W.2d 409, 412 (Iowa 1977). Thus, Fox's testimony regarding Ward's threats to witnesses has probative value. However, the probative value must be balanced against the potential for unfair prejudice.

"Evidence is unfairly prejudicial if it has 'an undue tendency to suggest decisions on an improper basis commonly, though not necessarily, an emotional one.'" *State v. Putman*, 848 N.W.2d 1, 14 (Iowa 2014) (citation omitted). Ward argues the testimony was unfairly prejudicial because the jury could conclude the defendant was a bad person because he made threats to influence witnesses and jump to the conclusion he was guilty of murder. Although such evidence may well have been prejudicial to Ward if believed by the jury, we cannot reconcile how the evidence was unfair to Ward if he made such statements because the evidence still did not lead to a conclusion of the specific crime Ward committed. However, Ward's claim fails because even if Fox's testimony was unfairly prejudicial its admission constituted harmless error.

"A trial court's erroneous admission of evidence is only reversed on appeal 'if a substantial right of the party is affected.'" *State v. Redmond*, 803 N.W.2d 112, 127 (Iowa 2011) (citation omitted); *see also* Iowa R. Evid. 5.103(a). "An erroneous evidentiary ruling is harmless if it does not cause prejudice." *Id.* "[P]rejudice occurs when the party has 'been "injuriously affected by the error" or . . . has "suffered a miscarriage of justice."'" *Redmond*, 803 N.W.2d at 127 (citations omitted).

Here, even if it was error to admit the evidence, Ward was not injuriously affected and has not suffered a miscarriage of justice. We reach this conclusion for two reasons. First, the jury verdict finding Ward guilty of the lesser-included offense of second-degree murder indicates the jury did not jump to the conclusion Ward was guilty of murder in the first degree, but rather carefully considered the facts and reached a verdict it deemed to be just.

Second, the record contains overwhelming evidence supporting Ward's conviction. Ward was seen holding a shotgun and approaching Wilson angrily seconds before the shots killing Wilson were fired; Ward was seen retrieving a Denver Broncos blanket and fleeing the scene; a shotgun matching the weapon that caused Wilson's wounds was found wrapped in a Denver Broncos blanket near Ward's home; Wilson's blood was found on the shotgun; a spot of Wilson's blood was also found on Ward's pants; and Ward's cell phone was found in the street near Wilson's body. Even without Fox's testimony, there is significant evidence supporting the jury's verdict. Thus, even if the testimony was unfairly prejudicial, admission of the testimony was harmless error. We also note Ward did not request a limiting instruction with respect to Fox's testimony. *See Stufflebeam*, 260 N.W.2d at 413 ("If [the] defendant wishes evidence admissible for one purpose limited to such purpose, he must ask for instruction so limiting it."). We conclude the district court did not abuse its discretion in permitting Fox's testimony at trial.

*B. Shotgun Demonstration.* Ward also contends the district court abused its discretion in allowing a State's witness to demonstrate how the shotgun was fired. Ward argues the demonstration of firing all five shells in the shotgun resulted in unfair prejudice because it could have given the jury misleading impressions about the manner in which the shells were ejected and the fast pace at which Ward could have fired the shotgun.

Defense counsel raised these same objections at trial. The district court found that the difference in shell ejection between the dummy shells and real shells could be addressed on cross examination, and did not render the

demonstration unfairly prejudicial. The court also found the demonstration would be unfairly prejudicial if used as an example of the pace at which Ward could fire the five shells. On this understanding, the court limited the manner in which the demonstration could be carried out, explaining to the witness:

> I just don't want you to rack through five of them in any— when I say with speed, I don't want you to do it in a speedy fashion in any way, shape, or form that would imply to this jury some manner in which it can be done quickly. I only want them to understand the mechanism.

The State asserts demonstration of the pump-action shotgun was highly probative and performed in a manner to minimize the potential for unfair prejudice. As explained in Ward's appellate brief, this case involved a question as to Ward's degree of guilt and "whether Ward intentionally shot Wilson in the abdomen or [if] it was an accident partially caused by Ward's recklessness." The specific shotgun used required a "pump" action between each shot, raising doubt that multiple shots to Wilson could have been an accident. Demonstration of the mechanism of the weapon was probative of the degree-of-guilt issue. "Demonstrative evidence is usually received if it affords a reasonable inference on a point in issue." *State v. Thornton*, 498 N.W.2d 670, 674 (Iowa 1993).

Further, the demonstration was carried out in the limited manner as ordered by the court. The witness paused between firing each dummy shell waiting for the State to request the firing of the next shell. This appropriately limited the possibility the jury would infer the pace at which Ward could have fired the weapon five times consecutively. Further, as the State asserts, the dummy shells did not make a loud noise or fire any projectiles, limiting the possibility the jury would feel unsafe or fearful during the demonstration. As such, we conclude

the demonstration was not unfairly prejudicial and the district court did not abuse its discretion in allowing the demonstration for the limited purpose of exhibiting the mechanism of the weapon.

**IV. Conclusion.**

Because we find the district court did not abuse its discretion in permitting Fox's testimony and the shotgun demonstration at trial, we affirm.

**AFFIRMED.**

Vogel, J., concurs; Vaitheswaran, J., concurs specially.

**VAITHESWARAN, Judge** (concurring specially)

I specially concur in the majority's conclusion that the gun demonstration "was not unfairly prejudicial and the district court did not abuse its discretion in allowing the demonstration for the limited purpose of exhibiting the mechanism of the gun." I would conclude the probative value of the evidence was minimal. The State presented extensive evidence of Ward's intent, including his anger towards Wilson, his decision to retrieve the shotgun, and his exchange of words with Wilson. The State did not need to demonstrate use of the 12-gauge shotgun to establish the element of intent.

On the other side of the coin, the gun demonstration had the potential to goad the jurors into overmastering hostility. *See State v. White*, 668 N.W.2d 850, 855 (Iowa 2003). The sergeant who performed the demonstration showed the jury what was required to fire each shell, described the sound that would be heard with each click of the gun, and testified the shotgun would have to be "snap[ped] [] back pretty good," to eject. I would conclude the negligible probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403.

Nonetheless, I concur in the result because I believe any error in the erroneous admission of the gun demonstration evidence was harmless. *See State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005) (finding harmless error in the erroneous admission of prejudicial evidence based in part on the overwhelming evidence of guilt).