# IN THE COURT OF APPEALS OF IOWA

No. 21-1318
Filed November 21, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHI DESHAWN PALMER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


        Michi Palmer appeals his convictions for intimidation with a dangerous weapon with intent, possession of a firearm by a felon, assault with intent to inflict serious injury, domestic abuse assault with a dangerous weapon, and harassment in the second degree.  **AFFIRMED.**


        Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Considered by Tabor, P.J., Ahlers, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**SCOTT, Senior Judge.**

Michi Palmer appeals his convictions for intimidation with a dangerous weapon with intent with a habitual offender enhancement, possession of a firearm by a felon with a habitual offender enhancement, assault with intent to inflict serious injury, domestic abuse assault with a dangerous weapon, and harassment in the second degree.  He contends the district court made erroneous evidentiary rulings and abused its discretion in denying his motion for new trial in which he asserted the convictions for all but the possession-of-a-firearm charge were contrary to the weight of the evidence.  We affirm.

**I.      *Background Facts and Proceedings***

A.B. and Palmer met in June 2019.  Shortly thereafter, Palmer moved into A.B.'s house with her and her children.  Their relationship was fraught with abuse.  Palmer abused A.B. emotionally as well as physically, including headbutting, biting, and punching her.

On June 5, 2020, the abuse came to a head.  After working together all day, Palmer and A.B. were drinking, then got into an argument.  A.B. wanted to leave and go to her friend's house, but Palmer did not want her to leave.  A.B. went anyway, but she was on the phone with Palmer the entire time she was gone.  A.B. left her friend's house after a very brief visit.

As A.B. left, Palmer pulled up next to her, instructing her to get in the car.  A.B. refused, as she could see Palmer was very upset and she did not feel comfortable entering the vehicle.  Incensed, Palmer exited the car and began to drag A.B. to the car by force.

While she was being dragged, A.B. lost her glasses. She asked Palmer to go back so she could try to find them. He obliged. While they were looking for the glasses, A.B. decided to try to make an escape. She got back in the car and attempted to leave, but Palmer pulled a gun. A.B. ducked for cover. She heard gunfire at least four times. Palmer fled on foot.

Bystanders called 911. The police arrived and took statements. When the police took A.B.'s statement, she told police Palmer had said he was going to kill her, just after firing his weapon and just prior to fleeing the scene. At trial, A.B. could not remember making this statement.

Prior to trial, Palmer was repeatedly in contact with A.B., and he tried to manipulate her testimony. He first asked her to sign an affidavit stating he was not the shooter. After his communication with A.B. was severed by the district court, he used an intermediary to tell A.B. to testify she was not in the car at the time of the shooting.

The State charged Palmer on several counts. After a four day trial, Palmer was convicted of the following: intimidation with a dangerous weapon with the intent to injure or provoke fear, in violation of Iowa Code section 708.6 (2020); being a felon in possession of a firearm, in violation of Iowa Code section 724.26; the lesser-included offense of assault with intent to inflict serious injury, in violation of Iowa Code section 708.2(1); domestic abuse assault with a dangerous weapon, in violation of Iowa Code section 708.2A(c); and the lesser-included offense of harassment in the second degree, in violation of Iowa Code sections 708.7(3). The district court set the first two counts to run consecutively and concurrently with the

others, resulting in a thirty-year prison sentence with a six-year mandatory minimum.

Palmer appeals. He claims: (i) the district court abused its discretion by admitting "irrelevant and unfairly prejudicial testimony" concerning prior instances of domestic abuse during Palmer and A.B.'s relationship; (ii) the court abused its discretion by admitting evidence of witness tampering during Palmer's pretrial detention; (iii) the court abused its discretion by admitting statements made by an unidentified 911 caller; and (iv) Palmer's convictions are contrary to the weight of the evidence. Upon our review, we affirm the district court's evidentiary rulings and Palmer's convictions.

## II.      Standards of Review

"Evidentiary rulings are generally reviewed for abuse of discretion." *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017). Rulings on hearsay are reviewed for errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). "We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." *State v. Wickes*, 910 N.W.2d 554, 563–64 (Iowa 2018) (quoting *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016)).

## III.      Admissibility of Evidence of Prior Domestic Abuse

Palmer claims A.B.'s testimony regarding prior instances of domestic abuse was inadmissible and the district court abused its discretion in allowing her testimony to be heard by the jury. He argues the State failed to establish a "valid, noncharacter justification for the relevance" of A.B.'s testimony on this issue. Palmer further argues even if there is a valid justification, the evidence's prejudicial effect far outweighs any probative value.

Iowa Rule of Evidence 5.404(b) governs this issue:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, for evidence of prior bad acts to be admitted, the evidence must be probative of some element or fact other than a defendant's general propensity to commit bad acts. *See, e.g.*, *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). Once the State has established evidence is probative of something other than propensity, the State must show the prior bad acts are relevant to a material, legitimate issue in the case. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). The State must then establish the probative value of the evidence substantially outweighs the prejudice to the defendant.

> In determining whether unfair prejudice generated by evidence of a defendant's other misconduct substantially outweighs the probative value of the evidence, the court should consider the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004).

A.B.'s testimony on this issue was presented to the jury during direct examination by the State:

> Q. [A.B.], at any point, did the verbal arguments ever escalate to physical violence? A. Yes.
> Q. Can you briefly describe the types of acts that were occurring?
> . . . .
> A. Oh, the time of—there was a case—time where he headbutted me, he bit me on my left side of my chin. One time he was punching me. He choked me.

Q. [A.B.], as it relates to what led up to those things, can you briefly describe what led up to those acts?

. . . .

A. I believe that it was probably—I'm pretty sure alcohol played a role in it, you know, and things were just going from one thing to another. But I believe that alcohol probably played a big part.

Q. Did the defendant appear to have insecurities as it related to the relationship with you? A. I'm going to have to say yes. There was some.

Q. At any time, was he demanding to see your phone? A. Yes.

Q. Did that happen often? A. Yes.

. . . .

Q. When the defendant would request your phone, did he tell you why he wanted your phone? A. I couldn't really necessarily remember specifically.

Q. At any point, did he break your phone? A. Yes.

The district court ruled as follows on the issue of admitting this evidence:

As I stated, I went back to look at [*Taylor*, 689 N.W.2d at 125]. The wording of *Taylor*, specifically on page 125, states, quote, "We also think there is a logical connection between a defendant's intent at the time of the crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control."

The court goes on to say, "The defendant's prior acts of violence towards his wife, while certainly illustrative of a propensity of violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question."

Based upon that wording, the court believes that there is, in this case, sufficient evidence and link to a legitimate issue of intent to fulfill the requirement of prong one [of a rule 5.404(b) analysis].

As such, the court has reconsidered its ruling, and the court will allow testimony of the prior acts, specific bad acts, of the defendant as it relates to this witness.

Upon our review, we find no abuse of discretion in the district court's decision on this issue. The State has satisfied all prongs of the rule 5.404(b) analysis. First, the evidence was probative of Palmer's intent and motive, as it establishes his state of mind at the time of the shooting based on prior conduct in

situations where he was similarly angry with A.B. Next, the evidence was relevant, because it established an element of several crimes, namely that Palmer placed A.B. in genuine fear of serious injury or death. Finally, the danger of prejudice was low. Palmer admitted he fired shots at the car, the testimony on this issue was limited, and the jury was given an appropriate limiting instruction on this issue. The fact the jury did not convict Palmer on all charges suggests they were able to adequately maintain their impartiality.

Palmer contends A.B.'s testimony alone cannot rise to the level of clear proof. He is incorrect. A victim's testimony alone satisfies the clear proof requirement. *See, e.g.*, *State v. Goodson*, 958 N.W.2d 791, 800 (Iowa 2021). The victim need not prove the prior bad acts occurred by clear and convincing evidence, but rather need only show "sufficient proof to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.'" *Taylor*, 689 N.W.2d at 130 (internal citation omitted). A.B.'s recollections of prior abuse in her testimony satisfy these requirements without any additional evidence.

## IV. *Admissibility of Pretrial Detention Communications*

Palmer next argues the district court abused its discretion in admitting communications between Palmer and A.B. during Palmer's pretrial detention. The State offered three exhibits containing excerpts of jail calls between A.B. and Palmer during his pretrial detention. The calls contained: (i) a conversation in which Palmer requested A.B. sign a notarized affidavit stating he was not the shooter; (ii) a conversation in which Palmer told A.B. he and his attorney planned to dig up evidence to impeach her and bring her character into question; and (iii) a

conversation where Palmer states he does not want to go to trial and wants to seek a plea deal.

The district court ruled on this issue:

> During these recorded conversations, Defendant appears to be attempting to influence [A.B.] to change her testimony. The evidence is being used for that purpose and not to show acts in conformity with character. Furthermore, there is no question that Defendant made the calls, and the call's probative value outweighs the prejudicial effect. As such, the calls fall squarely within the cases cited above and those portions of the telephone calls that Defendant attempts to influence [A.B.]'s testimony are admissible. Likewise, the State may bring in evidence of the Defendant's ongoing relationship with [A.B.] to provide the context of these attempts to influence the witness.

We agree with the district court's analysis. "An attempt by a party to improperly, even illegally, influence a witness is thought to be an admission by conduct. Such an admission does have independent probative value on the issue to be tried." *State v. Stufflebeam*, 260 N.W.2d 409, 412 (Iowa 1977). This is a long-recognized principle under Iowa law and one that has remained unchanged. *See State v. Zbornik*, 80 N.W.2d 735, 736–37 (Iowa 1957); *Gregory v. Sorenson*, 242 N.W. 91, 94 (Iowa 1932); *Kidd v. Ward*, 59 N.W. 279, 281 (Iowa 1894). Contrary to Palmer's contentions, the fact these calls occurred after the incident in question holds no weight. Indeed, if this were the case, no evidence of witness intimidation would be admissible, as witness intimidation occurs uniformly after crimes are committed. To the extent Palmer contends his statements in the calls divulged plea negotiations to the jury, that issue was not raised before the district court, and therefore we cannot consider it on appeal.[1]

---

[1] Defense counsel, when arguing about the admissibility of the jail calls before the district court, stated "I don't think [the conversations] would invoke plea

*V.*	*Admissibility of the 911 Call*

Palmer contends the district court erred in admitting a 911 call made at the scene by an unidentified bystander, arguing the statements constitute inadmissible hearsay. Palmer takes exception to the bystander's statement that A.B. was "awfully lucky to have lived through this one . . . . I'm just glad you didn't get shot."

Hearsay is a statement other than one made by the declarant testifying at trial offered for the proof of the matter asserted. Iowa R. Evid. 5.801(c). While hearsay is generally inadmissible, there are several enumerated exceptions. Iowa R. Evid. 5.802. Present sense impressions and excited utterances are two of these enumerated exceptions. Present sense impressions are statements describing or explaining an event or condition, made while or immediately after the declarant perceived it. Iowa R. Evid. 5.803(1). Excited utterances are statements relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. Iowa R. Evid. 5.803(2). Neither exception requires the declarant to be unavailable as a witness.

In considering this issue, the district court found:

> [T]he court will overrule the objection and the exhibit will be admitted. Specifically, the court believes while this may be double hearsay that both the caller in this case and the individual heard in the background would fall within exceptions of the hearsay rule. Specifically, as to the issue of the caller, the caller either is—let me back up for a moment.
> The identity and availability of that caller is unmaterial under the exception in which I'm admitting it. Specifically, it would be a present sense impression as to what he is hearing from the witness there on the scene or observing on the scene.
> To the extent it doesn't fall into that statement—the statement doesn't fall into a present sense impression, it would be an excited

negotiations . . . . I don't have that objection. It's not stating the plea negotiations he had with the State at that point."

> utterance because it is under the excitement of the incident. And as well, to the extent that [A.B.] can be heard in the background, her statements would be excited utterances because of the time frame.
>
> It's the court's understanding that this call was made within mere minutes of the shots being fired and as the individuals were observing or had just observed certain things that they described.

We agree with the district court's reasoning. The statements made by the bystander and A.B. during the 911 call clearly fall within the purview of present sense and excited utterance exceptions to hearsay. All statements in dispute are both present sense impressions and excited utterances, as contemplated by the plain language of the Iowa Rules of Evidence. The statements were made contemporaneously or shortly after the shooting occurred while emotions were running high. *Cf. State v. Swift*, 955 N.W.2d 876, 882 (Iowa 2021) (noting "Watson provided foundation for admission of Ameshia's statements about Ashanti's postshooting phone call sparking 'a whole bunch of emotions' in Ameshia").

## VI.  Weight of the Evidence

Palmer contends his convictions for intimidation with a dangerous weapon, assault with intent to inflict serious injury, domestic abuse assault with a dangerous weapon, and harassment were against the weight of the evidence.

"On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). When a claim is made that the verdict is contrary to the weight of the evidence, "the verdict may be set aside and a new trial granted" if "the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted." *State v. Serrato*,

787 N.W.2d 462, 472 (Iowa 2010) (quoting *State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998)).  "A verdict is contrary to the weight of the evidence where 'a greater amount of credible evidence supports one side of an issue or cause than the other.'"  *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (quoting *Ellis*, 578 N.W.2d at 658).

*A. Intimidation with a Dangerous Weapon.*  Palmer argues the weight of the evidence did not establish he acted with specific intent to cause pain, serious injury, or physical contact, or to place A.B. in fear.  Palmer claims he did not have the requisite intent because he shot at the tire of the car, rather than at A.B. herself.  This argument is unpersuasive.  Even if Palmer meant to shoot only the tire, that still allows a conclusion he meant to put A.B. in fear.  Palmer's admission he shot the car with her inside paired with his history of abusing A.B. would allow the jury to reasonably conclude he intended to, at the very least, instill fear in A.B.  The district court did not abuse its discretion on this count.

*B. The Assault Convictions.*  Palmer makes the same argument here, and it fails for the same reason.  Additionally, the jury could reasonably find Palmer assaulted A.B. when he dragged her to the car.  The district court did not abuse its discretion on these counts.

*C. Harassment.*  Finally, Palmer argues, because A.B. was unable to recall if she heard Palmer yell "I'll kill you" after the shooting, the court abused its discretion in not finding the harassment conviction was against the weight of the evidence.  The harassment charge was indeed based on A.B.'s report to police that Palmer threatened to kill her.  However, conflicting evidence was presented on this issue.  In her original statement to police, A.B. stated Palmer threatened to

kill her.  She could not recall this encounter at trial, but she also testified she had no reason to believe she did not say it.  And while she testified her windows were up in her car at the time of the shooting, she also testified the windows were not soundproof.  Considering all the evidence on this issue, a reasonable juror could have determined Palmer threatened to kill A.B.  The court did not abuse its discretion on this count.

For these reasons, we affirm the ruling of the district court in all respects.

**AFFIRMED.**