# IN THE COURT OF APPEALS OF IOWA

No. 23-1783
Filed December 4, 2024

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JAMARRION JAMES DAVIS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe,

Judge.


     Jamarrion James Davis appeals his conviction for first-degree murder.

**AFFIRMED.**


     Matthew B. De Jong, Rochester, Minnesota, for appellant.

     Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney

General, for appellee.


     Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

Jamarrion James Davis appeals after a jury found him guilty of first-degree murder. He challenges the sufficiency of the evidence identifying him as the person who shot and killed the victim. He also challenges the admissibility of a phone conversation recorded from jail and evidence of a possible motive. Because substantial evidence supports the jury's verdict and the district court did not abuse its discretion in admitting the challenged evidence, we affirm Davis's conviction.

**I. Background Facts and Proceedings.**

On the evening of July 4, 2023, Jameel Redding-Pettigrew walked by a cookout that his cousin was attending at a house in Fort Dodge. When his cousin saw him, she called Jameel over and offered him some food. The two had a short conversation before Jameel left.

Davis, who was also at the cookout, watched from the porch while Jameel and his cousin talked. When Jameel left, Davis put on a hoodie and started off in the direction Jameel was heading. Davis's girlfriend stopped Davis and spoke to him briefly. As Davis ran down an alley with his hand on the waistband of his pants, his girlfriend returned to the house looking "spooked" and went upstairs. A short time later, six gunshots rang out as someone shot Jameel two blocks away. Jameel died at the scene.

About twenty minutes later, Davis returned to the house. He entered through the backdoor, which was unusual. One guest described Davis as "[f]rantic, out of breath, [and] soaking wet." Jameel's cousin thought Davis looked "lost," and Davis did not respond to his name. Davis went upstairs and joined his girlfriend in her bedroom before her mother asked him to leave. When law enforcement

searched the home later that night, a spent bullet casing was recovered in one of the rooms.

Law enforcement found Davis at a friend's apartment two days later. Davis fled but was caught and arrested. Officers found Davis's gun inside the apartment. Forensic tests matched the gun to spent casings recovered from the shooting.

## II. Sufficiency of the Evidence.

Davis first challenges the sufficiency of the evidence supporting his conviction. We review claims of insufficient evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We affirm if substantial evidence supports the jury's verdicts. *Id.* Evidence is substantial if it would "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). When determining whether substantial evidence supports the verdicts, we view the evidence and all legitimate inferences and presumptions it supports it in the light most favorable to the State. *Id.*

Davis contends there is insufficient evidence that he shot Jameel. He argues that he does not match the description of the shooter given by the only eyewitness to the shooting. He also argues that his whereabouts at the time of the shooting were never confirmed. Finally, Davis claims there is insufficient forensic evidence to tie him to the shooting because there is no fingerprint or DNA evidence tying him to the gun and no blood on the pants he was wearing on the night of the shooting.

Substantial evidence supports the finding that Davis shot Jameel. Witnesses saw Davis leave the cookout immediately after Jameel and run down an alley in the direction that Jameel was heading. A short time later, six gunshots

were fired. Several people saw Davis with a firearm that day. Davis carried the gun in the waistband of his pants, and he was holding onto his waist as he ran down the alley. When Davis returned to the house after the shooting, he was unresponsive, appeared frantic, and was out of breath. Uncharacteristically, he entered the house through the back door. A spent casing was found in the house on the night of the shooting, and Davis's firearm was matched to Jameel's shooting. Although there may be gaps in the evidence or evidence that contradicts the State's theory, questions about weight and credibility of the evidence are for the jury to decide. *See State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (holding that in determining the sufficiency of the evidence of a defendant's guilt, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury. *Any inconsistencies in the testimony of a defense witness are for the jury's consideration, and do not justify a court's usurpation of the factfinding function of the jury.*" (cleaned up)). When the evidence and inferences drawn from it are viewed in the light most favorable to the State, sufficient evidence supports the jury's verdict.

### III. Evidentiary Rulings.

Davis also challenges two evidentiary rulings. We review evidentiary rulings for an abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). The trial court abuses its discretion when it acts for reasons not supported by substantial evidence or when it erroneously applies the law. *State v. Gomez Garcia*, 904 N.W.2d 172, 177 (Iowa 2017).

**A. Recorded Phone Call.**

Davis first challenges the admissibility of a recorded phone call he made while in jail. During the call, Davis describes the testimony his friends need to provide for his acquittal. The subject of that testimony is Davis's whereabouts at 8:00 p.m. on July 4 and during a phone call about the shooting. Davis supplies the "truthful" answers he expects his friends to give during their testimony.

Davis contends the recorded call is inadmissible because it is irrelevant. *See* Iowa R. Evid. 5.402 ("Irrelevant evidence is not admissible."). Evidence is relevant if it tends to "make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Iowa R. Evid. 5.401. Whether evidence is relevant "is a legal question lying within the broad discretion of the trial court," *State v. Canady*, 4 N.W.3d 661, 669 (Iowa 2024) (citation omitted), *reh'g denied* (Apr. 24, 2024), and "a relatively low bar," *Thoren*, 970 N.W.2d at 622 (citation omitted).

The State argues that the recording is relevant to Davis's identity as the shooter because it shows that Davis told his friends to lie about his whereabouts at the time of the shooting. The evidence is relevant for this purpose. *See State v. Stufflebeam*, 260 N.W.2d 409, 412 (Iowa 1977) ("An attempt by a party to improperly, even illegally, influence a witness is thought to be an admission by conduct. Such an admission does have independent probative value on the issue to be tried."). Davis disputes the State's characterization of the call, instead claiming that the purpose was merely to inform his friends what his attorney would ask if they testified. Although Davis's words on the recording are undisputed, the inferences that can be drawn from them are open to interpretation and thus are a

question of fact for the jury. *See State v. Martin*, 274 N.W.2d 348, 349 (Iowa 1979) ("When the testimony is disputed or, if undisputed, when different inferences may be drawn from it, the question is one of fact for the jury.").

Davis also claims that any probative value is outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). He argues that the evidence caused the jury to question why his friends did not testify and shifted the focus away from the State proving the elements of murder beyond a reasonable doubt by creating an expectation that he would provide an alibi defense. Davis also claims that the evidence allowed the State to rebut an alibi that was never presented to the jury.

We use a two-part test in deciding whether to exclude relevant evidence under rule 5.403. *See Thoren*, 970 N.W.2d at 622. We first consider the probative value of the evidence. *See id.* We then balance the probative value against the danger of its prejudicial or wrongful effect on the jury. *See id.* Because this test is not an exact science, "we give a great deal of leeway to the trial judge who must make this judgment call." *State v. Thompson*, 954 N.W.2d 402, 408 (Iowa 2021) (citation omitted). Our supreme court has cautioned that we should use rule 5.403 "sparingly." *State v. Buelow*, 951 N.W.2d 879, 889 (Iowa 2020).

We have already determined that the recording of the phone call is relevant and probative to the question of Davis's identity as the shooter, the fighting issue at trial. Davis's concern that the evidence would cause the jury to misplace the

burden of proof is alleviated by the jury instructions, which firmly place that burden on the State. *See State v. Davis*, 951 N.W.2d 8, 17 (Iowa 2020) ("We presume juries follow the court's instructions." (citation omitted)). The district court did not abuse its discretion by admitting the recording of the phone call into evidence.

**B. Motive Evidence.**

Davis also challenges the admissibility of evidence of his possible motive for shooting Jameel. At trial, one of the officers investigating Jameel's death testified that Jameel's brother, DJ, was charged with first-degree murder for killing Patrick Walker in 2023. The officer testified that Davis and Walker were connected because they were "in the same age group," shared "the same friends circle," and "lived next to each other" at one point. Davis claims the officer overstated the relationship between Davis and Walker, so any relevance is minimal and outweighed by the danger of unfair prejudice. This mirrors the argument that Davis's attorney made to the court in a discussion outside the jury's presence:

> I don't—I don't believe that they're going to have much evidence on that in terms—other than terms of just people saying, yeah, they were friends, something along [those] lines. I don't think there's any exhibits that they've proposed that show the nature and quality of that relationship. I just think that it's—on the balance that they haven't done enough to show that there's a connection there to argue that that's a motive for a defense.

The prosecutor disagreed:

> [W]e're not just pulling DJ Pettigrew's case out of thin air in this case or just trying to relate it back to this. The State anticipates, and expects testimony from law enforcement, that the defendant and the deceased from the May '23 murder, Patrick Walker, were very close. They are the same age, and that they used to be next door neighbors. That they are close. More importantly the State anticipates testimony from one of its witnesses that on the 4th of July, on the night of this case, when the decedent, Jameel Redding-Pettigrew, came up to the porch where the defendant was located,

an individual identified him as "DJ's little brother,"[1] and that that's what sparked the rest of the events on the 4th of July.

That statement is very relevant and brings in this case. "That's DJ's little brother" is what the State believes helped move forward the events of when the defendant went forward and committed the acts that the State has accused him of. Because of that, the May 2023 murder of Patrick Walker in which DJ Pettigrew, the older brother of Jameel Redding-Pettigrew, is charged with murder in the first degree of the defendant's friend is relevant and available for the State to address in front of the jury.

Although the State need not prove motive as an element of first-degree murder, motive is relevant to the element of premeditation. *See State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003) (stating that the premeditation element of murder may be shown by evidence of "motive based on the relationship between the defendant and the victim"). A defendant's relationship with the victim may also be relevant to the element of malice aforethought. *See id.* at 49 (noting the difficulty in proving a defendant's state of mind and stating that "[e]vidence of bad feelings or quarrels between the defendant and the victim are circumstances that may be used to support a finding of malice aforethought"). At trial, Davis's attorney conceded the evidence is relevant and "obviously . . . something that the State is allowed to talk about."

Davis then contends the probative value is outweighed by the danger of unfair prejudice, claiming that the officer overstated the strength of his connection to Walker or his motivation for revenge. Davis argues the evidence does not show that he harassed or made inappropriate or suspicious statements about Jameel. Davis further argues that there is no direct evidence of his friendship with Walker to justify a revenge killing.

---

[1] Witness testimony bore this out.

The State presented circumstantial evidence of a relationship between Davis and Walker through the officer's testimony that the two were the same age, in the same circle of friends, and once lived next door to each other. "Whether the necessary minimum level of logical connection between the offered evidence and the fact to be proven exists is a legal question lying within the broad discretion of the trial court." *Thompson*, 954 N.W.2d at 407 (citation omitted). The circumstantial evidence showing the connection between Davis and Walker crosses that threshold. Davis had the opportunity to attack that evidence during cross-examination and argue its weakness during closing argument. *See id.* at 408 (noting that objections that go to the weight of the evidence do not justify excluding the evidence); *State v. Metcalf*, 260 N.W.2d 857, 860 (Iowa 1977) ("[T]he choice between inferences to be drawn from circumstantial evidence is peculiarly the province of the jury.").

Assuming the evidence has low probative value, the court did not abuse its discretion in admitting it unless Davis shows a likelihood that he was unfairly prejudiced by it. *See Thompson*, 954 N.W.2d at 408 ("The relevant inquiry is not whether the evidence is prejudicial or inherently prejudicial but whether the evidence is unfairly prejudicial."); *State v. Baker*, 135 N.W. 1097, 1102 (Iowa 1912) ("While the materiality of this evidence is not very apparent, it is impossible to draw any reasonable inference of prejudice therefrom."). "All relevant evidence is inherently prejudicial in the sense of being detrimental to the opposing party's case." *Thompson*, 954 N.W.2d at 408 (cleaned up). Evidence is unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that

may cause a jury to base its decision on something other than the established propositions in the case." *State v. Webster*, 865 N.W.2d 223, 242–43 (Iowa 2015) (citation omitted). Although the motive evidence may have been prejudicial, Davis has not shown that the evidence here was unfairly so. The district court did not abuse its discretion by admitting it.

**AFFIRMED.**